WILLARD M. BLISS, administrator, *vs.* INHABITANTS OF SOUTH HADLEY.

Hampshire.    Sept. 20. — Oct. 19, 1887.    C. ALLEN & HOLMES, JJ., absent.

A child one year and ten months old was sent by his mother into the street in a country village for air and exercise, in the charge of a brother eight years old, who had been accustomed to take charge of him. They went across the street and stood for a time watching some other boys at play, the elder child not having  ld of the younger's hand. The younger child, without being noticed by the elder, left his side and started to cross the street alone, and, upon being seen and called by the elder, who ran after him, he ran, fell down, and rolled into a gutter at the side of the street, which had been filled with water for a long time by reason of an obstructed culvert, and received injuries which caused his death. Both of the child's parents and the elder brother knew of the existence

of this water. *Held*, in an action against the town, under the Pub. Sts. *c.* 52, § 17, that it could not be ruled as matter of law that the child's parents or his brother were not in the exercise of due care; and that it was competent for the jury to find that the children were travellers on the highway.

TORT, by the administrator of the estate of Frank E. Bliss, under the Pub. Sts. *c.* 52, § 17, for the loss of the life of his intestate on April 22, 1885, occasioned by an alleged defect in Grant Street and Bridge Street, in South Hadley. Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows :

The intestate was, at the time of his death, April 22, 1885, one year and ten months old, and the alleged injury occurred two weeks before. The plaintiff resided, with his wife and four children, of whom the intestate was one, in Grant Street, and about five rods from its intersection with Bridge Street. On the opposite side of Grant Street, and extending to Bridge Street, the gutter between the worked roadway and the sidewalk was filled with water by reason of an obstructed culvert, and had remained so for many days. The intestate fell into this water ; and there was evidence tending to show that that was the cause of his sickness and death.

The plaintiff testified that, at the time of the accident, he had lived in the same house about three and a half years ; that his family at that time consisted of his wife, a boy named Warren, ten years old, Leon, eight years old, a child next younger named Jesse, and the one who died, Frank, who was one year and ten months old ; that he was away from home at the time of the accident ; that his child was strong and healthy, and accustomed to be out on the street and about there ; that Leon was always very good to take care of him, and had been out with him many times ; that he had noticed the place at the corner of Grant Street and Bridge Street ; that there was water on Grant Street at the corner of Bridge Street, across the road from where the witness lived, and it extended back from Bridge Street fifteen or twenty rods on Grant Street ; that it might have been eight feet across and three feet deep ; that it was in very nearly the same condition on the morning of the accident as it had been before ; that he knew the water had been there for three or four years, more or less ; that he saw it that morning

as he went to work ; and that he knew it was a bad place for children.

Ellen Bliss, the mother of the intestate, testified that her husband went away that morning a little before seven o'clock ; that she was at work washing ; that it was a nice day, and she kept Leon at home from school to take Frank out for air and exercise ; that they went out about nine o'clock in the morning ; that she did not notice which way they went ; that the next she knew about it, some one called that her baby was drowning ; that she ran out and met some one bringing him ; that she carried him home and took proper care of him until he died ; that Leon had taken him out before, every time it was pleasant ; that she had noticed this water on the opposite side of Grant Street and towards Bridge Street, and saw it that morning about half-past eight o'clock ; that Frank was accustomed to play with Leon ; that she thought somebody would fall in the water some time, and that there was danger for school children, but did not think of her own ; and that she knew it was a dangerous place.

Leon Bliss testified that he remembered going out with his brother ; that they went over the sidewalk, across Bridge Street, where there were two boys about as large as himself playing a game ; that they stayed there a good while ; that Leon was not playing ; that Frank was standing there with him, but he did not have hold of his hand ; that Frank, without saying anything, and without Leon's noticing it, went across the road towards the house ; that Frank was half-way across the road when he saw him, and he then ran after him and called to him, and Frank ran, fell down, and rolled into the water, which covered him all over ; and that he knew that this water was on the street in the ditch near the sidewalk, but had not known of any one's falling into it before his brother fell in.

Hannah Cummings testified that she lived at the corner of Grant Street and Bridge Street ; that she saw the children as they went out, and saw them go across Bridge Street, and stand there with other boys ; that they were over there a few minutes, she did not know exactly how long ; that she looked up and saw Frank coming across the street, and hallooed, but Leon did not hear her ; that she hallooed again, and Leon ran ; that

she saw Frank fall into the water; that she had seen the children about together a great many times; and that Leon always took good care of his brother, but did not keep hold of his hand always.

There was no other evidence on the question of due care, or whether the intestate was a traveller on the highway.

The defendant asked the judge to rule that there was no evidence that the plaintiff's intestate was in the exercise of due care; that there was no evidence that he was a traveller on the highway; and that, on all the evidence on these points, the plaintiff could not recover.

The judge refused so to rule, and submitted the case to the jury, with full instructions, not otherwise excepted to.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. C. Hammond,* for the defendant.

*D. W. Bond,* for the plaintiff.

MORTON, C. J. It cannot be said, as matter of law, that it was negligence on the part of the parents of the intestate to send him into the street for air and exercise in the charge of his brother Leon, who was eight years old. It was a question of fact, depending upon how much the street was used, and upon the intelligence, capacity, and experience of Leon, and was properly submitted to the jury. The evidence does not disclose any decisive act of negligence on the part of Leon, and it was for the jury to determine whether he was exercising reasonable diligence in the care of his infant brother.

It was competent for the jury to find that the boys were travellers. They were using the street for air and exercise. The fact that they stopped for a few minutes to watch other boys at play was one of the natural and ordinary incidents of travel, and did not divest them of their rights as travellers. *Gulline* v. *Lowell,* 144 Mass. 491. *Exceptions overruled.*